## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT BRASWELL | § | PLAINTIFF |
| | § | |
| | § | |
| v. | § | Civil Action No. 1:13cv451-HSO-RHW |
| | § | |
| | § | |
| JACKSON COUNTY, | § | |
| MISSISSIPPI, *et al.* | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING
## [172] MOTION FOR SUMMARY JUDGMENT BY DEFENDANT
## JACKSON COUNTY, MISSISSIPPI, AND FOR PARTIAL SUMMARY
## JUDGMENT BY DEFENDANTS WILLIAM E. PATTESON,
## LAMAR PALMER, AND JONATHAN BLAKENEY

BEFORE THE COURT is the Motion [172] for Summary Judgment by

Defendant Jackson County, Mississippi, and for Partial Summary Judgment by

individual Defendants William E. Patteson, Lamar Palmer, and Jonathan

Blakeney. This Motion is fully briefed. Having considered the Motion, related

pleadings, the record, and relevant legal authorities, the Court is of the opinion that

the Motion [172] should be granted, and that Plaintiff's claims against Defendant

Jackson County, Mississippi, should be dismissed in their entirety. Plaintiff's

claims against Defendants William E. Patteson, Lamar Palmer, and Jonathan

Blakeney pursuant to 42 U.S.C. §§ 1983 and 1988 for unreasonable seizure should

be dismissed with prejudice. Plaintiff's claims against Defendants William E.

Patteson, Lamar Palmer, and Jonathan Blakeney, in their individual capacities, pursuant to 42 U.S.C. §§ 1983 and 1988 for excessive force will proceed.

# I. BACKGROUND

## A. Factual Background

This case arises out of the arrest of Plaintiff Dwight Braswell by the Jackson County, Mississippi, Sheriff's Department, on April 29, 2012. Investigative Report [172-1] at 1-4. Plaintiff was arrested in Vancleave, Mississippi, by Deputy Chris Goff, who is not a Defendant in this case, for disorderly conduct and trespassing, following which Deputy Goff transported Plaintiff to the Jackson County Adult Detention Center (the "ADC"). *Id.*; Dep. of Dwight R. Braswell [172-2] at 20-21.

Sergeant Michael Nutefall was on patrol and also responded to the call that prompted Plaintiff's arrest. Dep. of Sergeant Michael Nutefall [175-2] at 7, 9. According to Sergeant Nutefall, who is not a party to this action, Plaintiff "was acting belligerent, cussing, hollering, [and] making threats." *Id.* at 9. "Deputy Goff arrested [Plaintiff], put him in handcuffs." *Id.* Sergeant Nutefall opened the back door of Deputy Goff's police vehicle so that Deputy Goff could place Plaintiff in the backseat. *Id.* As Deputy Goff departed with Plaintiff for the ADC, Sergeant Nutefall contacted the ADC to inform the staff there that "Deputy Goff would need a 'meet and great,'" and that "he had a 'hot one' coming in." *Id.* According to Sergeant Nutefall, "[t]hat's a term we use for a violent arrestee." *Id.* Sergeant

Nutefall "believe[d] that [he] made a statement that [Plaintiff] had made threats towards law enforcement, to be careful." *Id.*

According to Plaintiff, an unidentified "deputy slapped him in the face when they arrived at the garage of the [ADC]." Pl.'s Answers to First Set of Interrogs. [172-3] at 16.  Plaintiff claims that while at the ADC, he was beaten and restrained and that he suffered damages. *Id.* at 11, 16-17.  Plaintiff alleges that officers employed excessive force against him both at the ADC and after he was transported to a hospital for medical treatment.  Plaintiff was released from the ADC on April 30, 2012.  Release Sheet [175-10] at 2.

B.   Procedural Background

Plaintiff filed his Complaint [1] on December 6, 2013, against Defendants Jackson County, Mississippi (the "County"); Sheriff Mike Byrd, individually and in his official capacity as Sheriff of Jackson County; Major Brian Grady, individually and in his official capacity as Jail Administrator for the ADC; and Travelers Casualty and Surety Company of America ("Travelers").  Compl. [1] at 1.

Plaintiff later filed an Amended Complaint [102], omitting any claims against Sheriff Mike Byrd and Major Brian Grady, who are no longer Defendants in this case.  Plaintiff named as Defendants the County; William E. Patteson, individually; Lamar Palmer, individually; Jonathan Blakeney, individually; Travelers; and "John or Jane Does 1-15."  Am. Compl. [102] at 1-3.  Jackson County, Patteson, Palmer, and Blakeney (the "Jackson County Defendants") subsequently filed a Motion to

Dismiss Certain Claims [167], which the Court granted.  The remaining claims against the Jackson County Defendants are under 42 U.S.C. §§ 1983 and 1988 for unreasonable seizure and excessive force under the Fourth and Fourteenth Amendment, and against Defendant Jackson County, Mississippi, for inadequate training and/or supervision, negligent hiring and retention, and failure to discipline or take necessary corrective action.

Defendant Jackson County, Mississippi, seeks dismissal of all claims against it, while the individual Defendants Patteson, Palmer, and Blakeney seek dismissal of the unreasonable seizure claim asserted against them.[1]

## II. DISCUSSION

A.   Summary Judgment Standard

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine

---

[1]  "Defendants Patteson, Palmer, and Blakeney acknowledge the numerous disputed facts with respect to [the use of excessive force], and therefore do not seek summary judgment on Plaintiff's Fourteenth Amendment, due process, excessive force claim."  Defs.' Mem. [173] at 10.

issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). In general, a defendant bears the burden of proving any affirmative defense. *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).

B.    Unreasonable Seizure Claims Against Individual Defendants

Plaintiff refers to this claim in the Amended Complaint as one for "unreasonable seizure." *See, e.g.,* Am. Compl. [102] at 13, 15, 17. For the reasons that follow, summary judgment on the unreasonable seizure claim as to Defendants Patteson, Palmer, and Blakeney is appropriate because the record is devoid of any evidence those individuals had any personal involvement in Plaintiff's initial arrest or were in any way causally connected to any alleged deprivation which occurred during the initial arrest.

"A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'" *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Tex. Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008)). To the extent that the "unreasonable seizure" claim relates to any excessive force allegedly employed at the time of Plaintiff's initial arrest, summary judgment in the individual Defendants' favor is appropriate because there is no competent summary judgment evidence that any of the named individual Defendants were present or involved in any way with Plaintiff's initial arrest. *See id.*; *see also Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (recognizing that the Fourth Amendment's protection against unreasonable seizures of the person has been applied in § 1983 actions to impose liability on police officers who employ excessive force).

To the extent that Plaintiff's "unreasonable seizure" claim is one premised upon any alleged false arrest, summary judgment is appropriate for the same reason. *See Jones*, 678 F.3d at 349; *see also Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (holding that to establish that individual defendants violated a plaintiff's constitutional rights on a false arrest claim, plaintiff must show that the officers lacked probable cause). The individual Defendants are entitled to summary

judgment on any "unreasonable seizure" claim arising out of Plaintiff's initial arrest.[2]

C.    Claims Against Jackson County

"[C]laims against local governments premised on a theory of *respondeat superior* are not cognizable under § 1983." *Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-94 (1978)). "Accordingly, 'isolated unconstitutional actions by municipal employees will almost never trigger liability,' but rather 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur.'" *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

"To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell*, 436 U.S. at 694). To this end, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). These three elements "are necessary to distinguish

---

[2]  To the extent that Plaintiff's "unreasonable seizure" claim refers to excessive force allegedly applied once Plaintiff arrived at the ADC, such a claim is coextensive with Plaintiff's "excessive force" claim. The individual Defendants have not moved for summary judgment on the "excessive force" claim, which will proceed as to the individual Defendants.

individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski*, 237 F.3d at 578.

1.   Plaintiff's "Unreasonable Seizure" Claim Against the County

As discussed earlier, Plaintiff refers to this claim in the Amended Complaint as one for "unreasonable seizure." *See, e.g.,* Am. Compl. [102] at 13, 15, 17.  It is unclear whether Plaintiff is alleging unreasonable seizure or excessive force associated with his initial arrest, or unlawful seizure or false arrest in connection with the arrest.  Regardless, summary judgment in the City's favor on such a claim is appropriate.

Plaintiff has not pointed to any official written or otherwise specially articulated policy to support an "unreasonable seizure" claim against the County as it relates to the initial arrest.  Nor has Plaintiff directed the Court to any competent summary evidence on this point. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").  Plaintiff's opposition to the County's request for summary judgment focuses on the Sheriff's Department employees at the ADC.  Pl.'s Mem. [176] at 16-21.  Because Plaintiff has not shown that an official policy or custom of the County was the moving force behind any alleged constitutional violation as to his

-8-

"unreasonable seizure" claim, summary judgment in the County's favor on this claim is warranted.

Moreover, Plaintiff has not demonstrated a constitutional violation by any County employee or agent as it relates to his initial arrest. Plaintiff has not pointed to any competent summary judgment evidence indicating that the arresting officer employed any excessive force at the scene. When asked if the arresting officer forcefully placed him into the patrol car, Plaintiff testified "I don't remember. But I don't believe I was forced in there, no." Dep. of Dwight R. Braswell [172-2] at 21.

To the extent that Plaintiff's "unreasonable seizure" claim is premised upon an alleged false arrest, to demonstrate a constitutional violation he must show that the officer lacked an arguable probable cause for his arrest. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 206 (quoting *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000)). "A showing of probable cause requires much less evidence than does a finding sufficient to convict." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (citation omitted).

Defendants assert that the arresting deputy had sufficient probable cause to arrest Plaintiff because Plaintiff's actions on the day in question were in violation of

-9-

at least three Mississippi criminal statutes, namely Mississippi Code §§ 97-35-9, 97-35-11, and 97-35-15. Defs.' Mem. [173] at 6. Section 97-35-9 provides as follows:

> A person who wilfully disturbs the peace of any family or person by an explosion of gunpowder or other explosive substance, or by loud or unusual noise, or by any tumultuous or offensive conduct, shall be punished by fine or imprisonment, or both; the fine not to exceed one hundred dollars, and the imprisonment not to exceed six months in the county jail.

Miss. Code § 97-35-9. Section 97-35-11 reads, in relevant part, as follows:

> Any person who enters the dwelling house of another, or the yard or curtilage thereof, or upon the public highway, or any other place near such premises, and in the presence or hearing of the family or the possessor or occupant thereof, or of any member thereof, makes use of abusive, profane, vulgar or indecent language, or is guilty of any indecent exposure of his or her person at such place, shall be punished for a misdemeanor.

Miss. Code § 97-35-11. Finally, Mississippi Code § 97-35-15(1) provides that:

> Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail not more than six (6) months, or both.

Miss. Code § 97-35-15(1).

> Plaintiff testified that he had

> called 911 and said, y'all need to send somebody back to Seaman Road. There may be an altercation. I went back. There was no altercation. The next thing that I know, a patrol car pulled up. I think it was Deputy Goff pulled up. And I was cussing at Ronnie Wood. He's

> Hispanic.   I did use some profane language towards him simply
> because he pulled a gun on me after all I've done for him.

Dep. of Dwight R. Braswell [172-2] at 20.  Because the undisputed summary

judgment record supports the conclusion that the arresting deputy had probable

cause to believe that Plaintiff was violating one or more of the foregoing statutes,

Defendants have shown that there was no unlawful arrest of Plaintiff.  The County

is therefore entitled to summary judgment on Plaintiff's claim for "unreasonable

seizure."

###### 2.   Plaintiff's Excessive Force Claim Against the County

Plaintiff has not pointed to any official written policy to support his excessive

force claim.  Instead, Plaintiff appears to advance two alternative theories of

municipal liability: (1) unwritten custom of employing excessive force; and (2)

inadequate training.  Pl.'s Mem. [176] at 16-21.

###### (a)   Unwritten Custom of Employing Excessive Force

"An official policy may take various forms, including a widespread practice

that is so common and well-settled as to constitute a custom that fairly represents

municipal policy." *Fennell*, 804 F.3d at 413 (quotation omitted).  "Regardless of its

form, the policymaker must have actual or constructive knowledge of the official

policy or custom." *Id.* (citations omitted).

Official policy may "arise in the form of a widespread practice that is 'so

common and well-settled as to constitute a custom that fairly represents municipal

policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)

(quoting *Piotrowski*, 237 F. 3d at 579).  "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)).

"It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson*, 588 F.3d at 850-51 (quoting *Piotrowski*, 237 F.3d at 582).  "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'"  *Id.* at 851 (quoting *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"  *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).  A plaintiff seeking to withstand summary judgment must provide sufficient evidence "to provide context that would show a pattern of establishing a municipal policy."  *Id.* at 851.

Plaintiff relies primarily upon the testimony of Kristen McIlwain, whom he describes as a sergeant with the Sheriff's Department who has worked at the ADC. Pl.'s Mem. [176] at 18.  McIlwain testified that

> when we would be on patrol and somebody would upset us, the sheriff
> would get on the radio and say, beat his ass or make him pay and stuff
> like that.  And I watched the sheriff, you know, on the video with Stahl

kick the guy that was, you know, under arrest.  And that is against our policy for the Jackson County Sheriff's Department.

Dep. of Kristen McIlwain [175-13] at 12.

McIlwain further testified as follows:

Q.   Now, did he ever tell you to beat somebody's ass?
A.   The sheriff?
Q.   Yes.
A.   He would make it known that you'd beat people – you know, if they mess with you, his exact words was, make them pay at the pump, beat their ass.
Q.   And did you do that?
A.   Absolutely not.

                              *   *   *

Q.   So just because the sheriff said that, that didn't mean people were going to do it, right?
A.   Well, I will tell you this, this sheriff doesn't condone [sic] it in no way, shape, fashion or form.

*Id.* at 12-13.

McIlwain was asked to describe the "video with Stahl" she referenced in her testimony.  McIlwain responded as follows:

A.   It was Dustin Gregg and Chris Goff – yeah.  Dustin Gregg and Chris Goff were, I believe, on a traffic stop out east somewhere.  And they were dealing with [John] Mark Stahl.  And he was just acting crazy, to say the least.  But they let him get in his car, which was wrong.  They let him get in his car.  He takes off with the police car, and there's a pursuit.
        And then I believe it was Captain Nevels – it was one of the captains.  He may have been a lieutenant then – PITs him and takes out the car, and then the sheriff was called and shows up.  And then as he is standing against the car in his handcuffs, the sheriff comes up and kicks him or knees him.
Q.   Okay.  So he was in handcuffs?
A.   Yes.
Q.   Was he in the custody of the Jackson County Sheriff's Department?

-13-

> A.    Yes, sir.
> Q.    And did he pose a danger to anybody?
> A.    I didn't see on the tape where he did.

*Id.* at 22-23.

With respect to Byrd's purported direction to the deputies, McIlwain testified

as follows:

> Q.    And I think you described earlier that you had actually heard
>       him get on the radio and encourage other people to do the same
>       type of contact [sic]?
> A.    Absolutely.
> Q.    And so what kind of stuff would he say on the radio?
> A.    Beat his ass, make him pay at the pump, just stuff like that.
> Q.    So was that on rare occasions?
> A.    That was on really any - - you know, the sheriff, if you mess with
>       one of his officers, that was his - - you know, and they let it be
>       known over the radio that he was being, you know, combative or
>       whatever, that's what he would say.  When I had trouble with
>       an inmate or trouble with anybody, I didn't let anyone know
>       that, you know.  People out there didn't need to know that I was
>       having trouble or whatever.  You know, I handled it.  I've never
>       had to assault anyone, even as a small female.

*Id.* at 25.

Plaintiff's reliance on the foregoing testimony is not sufficient competent

summary judgment evidence to demonstrate a pattern of frequent, prior

constitutional violations similar to the events at issue in this case.  McIlwain's

testimony references only one other specific incident involving an arrestee named

Stahl.  *See* Dep. of Kristen McIlwain [175-13] at 12, 22-24.  McIlwain's testimony

indicates that the excessive force allegedly employed was used after a police

pursuit, during Stahl's initial arrest.  *See id*.  The Stahl incident occurred on or

-14-

about June 18, 2012.  *See* Stahl Compl. [172-5] at 1, 3.  The incident in this case occurred almost two months earlier, on April 29 and 30, 2012.  *See, e.g.,* Am. Compl. [102] at 5; Investigative Report [172-1] at 1-4.  A pattern requires "'sufficiently numerous *prior* incidents,' as opposed to 'isolated incidents.'"  *Peterson*, 588 F.3d at 851 (quoting *McConney*, 863 F.2d at 1184) (emphasis added).

Even assuming the Stahl incident were sufficiently factually similar to Plaintiff's, Plaintiff has identified only this one other specific incident, which occurred after Plaintiff's arrest.  Plaintiff has offered no competent summary judgment evidence demonstrating any context regarding the size of the Jackson County Sheriff's Department or the number of arrests during the relevant time period. *See Peterson*, 588 F.3d at 851.  Nor is it clear from McIlwain's general deposition testimony when, in relation to Plaintiff's arrest, any of Byrd's statements were purportedly made.

In sum, Plaintiff has not carried his summary judgment burden of establishing an unofficial custom or a pattern or practice of excessive force as a basis for imposing municipal liability against the County.

(b)   Inadequate Training

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*,

-15-

563 U.S. 51, 61 (2011).  "A municipality's culpability for a deprivation of rights is at

its most tenuous where a claim turns on a failure to train."  *Id.* (citation omitted).

> [T]o succeed on a *Monell* claim arising from a municipality's failure to
> adopt an adequate training policy, a plaintiff must demonstrate that:
> "(1) [the municipality's] training policy procedures were inadequate, (2)
> [the municipality] was deliberately indifferent in adopting its training
> policy, and (3) the inadequate training policy directly caused [the
> constitutional violation]."

*Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 484 (5th Cir. 2014) (quoting

*Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).  "'Deliberate

indifference' is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action."  *Connick*, 563 U.S. at 61.

The Fifth Circuit has explained that "[u]nder the applicable case law, there

are two ways in which a plaintiff can establish a municipality's deliberate

indifference to the need for proper training."  *Kitchen*, 759 F.3d at 484.  "The first

and more typical approach . . . is to demonstrate that a municipality had '[n]otice of

a pattern of similar violations,' which were 'fairly similar to what ultimately

transpired' when the plaintiff[']s own constitutional rights were violated."

*Id.* (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

"The second approach . . . is the limited exception for 'single-incident liability'

in a 'narrow range of circumstances' where a constitutional violation would result

as 'the highly predictable consequence' of a particular failure to train."  *Id.* (quoting

*Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008)).  "[S]howing merely that

additional training would have been helpful in making difficult decisions does not

establish municipal liability." *Id.* at 485 (quoting *Connick*, 563 U.S. at 68).  Instead,

"the unconstitutional consequences of failing to train [must] be so patently obvious

that a city could be liable under § 1983 without proof of a pre-existing pattern of

violations." *Connick*, 563 U.S. at 64.

Under the first approach, the Court has already determined that Plaintiff has

not submitted sufficient competent summary judgment proof establishing a pattern

of constitutional violations bearing sufficient resemblance to the events at issue in

this case.  The one specific incident upon which Plaintiff relies, the Stahl incident,

occurred after the alleged use of excessive force involving Plaintiff.  The evidence

presented by Plaintiff fails to describe any constitutional violations that were "fairly

similar to what ultimately transpired" at the time Plaintiff's rights were allegedly

violated.  *Kitchen*, 759 F.3d at 484.  "Without notice that a course of training is

deficient in a particular respect, decisionmakers can hardly be said to have

deliberately chosen a training program that will cause violations of constitutional

rights." *Connick*, 563 U.S. at 62.  Plaintiff cannot establish municipal liability

under the first approach.

Turning to the second approach, Plaintiff has not shown the applicability of

the "limited exception for single-incident liability." *Kitchen*, 759 F.3d at 484.

Plaintiff makes a conclusory statement that there was a "complete void of any

training policies for the deputies working at the ADC" which led to violations of

Plaintiff's constitutional rights.  Pl.'s Mem. [176] at 21.  Plaintiff cites the

deposition testimony of Defendants Blakeney, Palmer, and Patteson in an effort to demonstrate "a complete lack of training [the County's] correctional officers and how to handle and treat pretrial detainees." *Id.* at 20.  The Court is not persuaded that this evidence supports Plaintiff's conclusory statements regarding the alleged lack of training for officers.[3]  Plaintiff has not shown a failure to train.  Even if he had, Plaintiff has not shown that the violation of his constitutional rights was a "the highly predictable consequence" of any deficiencies in training.  *Kitchen*, 759 F.3d at 484.

To the extent Plaintiff complains that the Sheriff's Department "had absolutely no policies or procedures on how to train its employees at the [ADC] or what qualifications were required for an employee of the [ADC]," Pl.'s Mem. [1765] at 20, Plaintiff has not shown how the purported absence of these policies or procedures directly caused his alleged constitutional deprivation.  Plaintiff has not

---

[3]  In the deposition excerpts submitted by Plaintiff, each officer testified to the training that he had received through the Sheriff's Department.  *See, e.g.,* Dep. of Jonathan Blakeney [175-14] at 7-8; Dep. of Lamar Palmer [175-15] at 10-16; Dep. of William Patteson [175-16] at 9-10.  Blakeney testified that when he was first hired, he "shadow[ed] another corrections officer," that he subsequently received additional training "at different times," and that he has received individualized or specialized training for his corrections officer position "throughout the time [he] was there."  Dep. of Jonathan Blakeney [175-14] at 7-8.  Lamar testified that he was issued and required to read the standard operating procedures of the Sheriff's Department, that he received training on the use of force through the Sheriff's Department's mounted patrol division, that he attended follow-up training through a "corrections officers class that was held at the Harrison County Sheriff's Office," that he has attended some "conference classes" since he was hired, and that he has been trained on "less than lethal" force instruments.  Dep. of Lamar Palmer [175-15] at 10-16.  Palmer testified that he had received training through a 96-hour class at Harrison County Corrections Academy when he was moved from his patrolman position to the ADC, that he had received and read the Sheriff's Department's standard operating procedures, and that he received a "refresher course" every year on deadly force.  Dep. of William Patteson [175-16] at 8-10.

pointed to any competent summary judgment evidence even suggesting that any County policymaker was deliberately indifferent to possible deficiencies in the officers' training.  Plaintiff offers conclusory assertions that Sheriff Byrd exhibited deliberate indifference to citizens' rights and argues that "Plaintiff has alleged sufficient allegations in the Amended Complaint to articulate a colorable action against Jackson County, Mississippi."  *Id.* at 21.  More, however, is required at the summary judgment stage.  A party cannot defeat summary judgment with conclusory allegations and unsubstantiated assertions, which is all that Plaintiff offers on this claim against the County.  *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citation omitted).

In sum, Plaintiff has not shown the County's purportedly inadequate training of its officers rose to the level of an official government policy or custom for purposes of § 1983.  Plaintiff's claims against the County will be dismissed in their entirety.

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  For the foregoing reasons, the Court concludes that the Motion [172] for Summary Judgment by Defendant Jackson County, Mississippi, and for Partial Summary Judgment by individual Defendants William E. Patteson, Lamar Palmer, and Jonathan Blakeney should be granted.  Plaintiff's claims against the County should be dismissed in their entirety.  Plaintiff's claims against Patteson, Palmer, and

Blakeney pursuant to 42 U.S.C. §§ 1983 and 1988 for unreasonable seizure should be dismissed with prejudice.  Plaintiff's individual capacity claims against Patteson, Palmer, and Blakeney pursuant to 42 U.S.C. §§ 1983 and 1988 for excessive force will proceed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [172] for Summary Judgment by Defendant Jackson County, Mississippi, and for Partial Summary Judgment by individual Defendants William E. Patteson, Lamar Palmer, and Jonathan Blakeney is **GRANTED**, and Plaintiff's claims against Defendant Jackson County, Mississippi, and Plaintiff's claims against Defendants William E. Patteson, Lamar Palmer, and Jonathan Blakeney pursuant to 42 U.S.C. §§ 1983 and 1988 for unreasonable seizure are **DISMISSED WITH PREJUDICE**. Plaintiff's individual capacity claims for excessive force under 42 U.S.C. §§ 1983 and 1988 against Defendants William E. Patteson, Lamar Palmer, and Jonathan Blakeney, in their individual capacities, will proceed.

**SO ORDERED AND ADJUDGED**, this the 22nd day of January, 2016.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE